Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| JAZMIN RIVERA VALENTIN<br><br>Recurrida<br><br>v.<br><br>MUNICIPIO DE CAGUAS, UNIVERSAL PROPERTIES REALTY GOVERMENT SERVICES LLC, ASEGURADORAS X, Y, Z<br><br>Recurrida | TA2025CE00196 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV01160<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Comparece el Municipio Autónomo de Caguas (en adelante, Municipio y/o parte peticionaria) mediante una *Petición de Certiorari*, para solicitarnos la revisión de la *Resolución* emitida y notificada el 23 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas.[1] Mediante la *Resolución* recurrida, el foro de instancia declaró *No Ha Lugar* una solicitud de sentencia sumaria instada por el Municipio.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari*.

I

El presente caso tuvo su inicio cuando, el 8 de abril de 2024, Jazmin Rivera Valentín (en adelante, señora Rivera Valentín o/y recurrida) interpuso una *Demanda* sobre incumplimiento de contrato y daños y perjuicios contra el Municipio, Universal Properties Realty Goverment Services LLC (en adelante, Universal

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 33.

Properties), entre otras partes desconocidas.[2] En su pliego, solicitó, en síntesis, que se ordenara el cumplimiento de un contrato de compraventa y la entrega de una propiedad, así como de ciertas sumas de dinero por concepto de daños, angustias y la imposición de costas, gastos y honorarios de abogado.

De ahí, el tribunal de instancia expidió los emplazamientos personales, tanto para el Municipio como para Universal Properties.[3] Posteriormente, el 20 de mayo de 2025, el Municipio presentó una *Contestación a demanda y demanda contra coparte.* Mediante su contestación, aceptó algunos hechos y negó muchos otros.[4] Por otro lado, en su demanda contra coparte, entre otras cosas, solicitó que se condenara a Universal Properties a pagar los dineros aportados por la señora Rivera Valentín y cualquier otra suma que, en su día, adjudicara el tribunal.

Así las cosas, el 10 de junio de 2024, la señora Rivera Valentín presentó un escrito para que se autorizara emplazar por edicto a Universal Properties.[5] En apoyo a lo anterior, esbozó que se realizaron gestiones para diligenciar el emplazamiento personal, pero que las mismas fueron infructuosas. En apoyo a lo anterior, adjuntó a su escrito con una una declaración jurada.

En respuesta, mediante *Orden,* emitida el 10 de junio de 2024 y notificada el día 12, del mismo mes y año, el foro de instancia autorizó el emplazamiento por edicto.[6] En consecuencia, ese mismo 12 de junio, se expidió el emplazamiento por edicto,[7] el cual fue publicado el 18 de junio de 2024, en el periódico El Vocero de Puerto Rico.[8] Obra en los autos copia del edicto publicado, la declaración

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] *Íd.,* a las Entradas Núm. 2-3.
[4] *Íd.,* a la Entrada Núm. 6.
[5] *Íd.* a la Entrada Núm. 8.
[6] *Íd.,* a la Entrada Núm. 11.
[7] *Íd.,* a la Entrada Núm. 12.
[8] *Íd.,* a la Entrada Núm. 15.

jurada, así como documentos relacionados al envío de la demanda y emplazamiento por correo certificado a Universal Properties.[9]

Luego, el 12 de agosto de 2024, la señora Rivera Valentín presentó una *Moción urgente en solicitud de anotación de rebeldía*,[10] la cual fue concedida mediante *Orden*, emitida el 16 de agosto de 2024, y posteriormente notificada el día 21 del mismo mes y año.[11]

Así las cosas, y luego de varios incidentes procesales innecesarios pormenorizar, el 5 de mayo de 2025, el Municipio interpuso una *Moción solicitando sentencia sumaria parcial*.[12] Esencialmente, planteó que en el presente litigio no existían controversias sustanciales de hecho y que, como cuestión de derecho, procedía la desestimación de la demanda en cuanto al Municipio. Particularmente, puesto a que entre la señora Rivera Valentín y el Municipio no se había formalizado un contrato, de manera que, quien debía responder por los daños y angustias sufridas por esta era Universal Properties. Arguyó que dado a que el Municipio no era parte en el contrato objeto de este caso, no se le podía exigir el cumplimiento de sus disposiciones. Por otra parte, adujo que Universal Properties era responsable de las alegaciones contenidas en la demanda incoada por la señora Rivera Valentín dado a que, mediante maquinaciones insidiosas, la indujo a firmar un contrato nulo, el cual no cumplía con los requisitos que se exigen de los contratos municipales para su validez.

---

[9] SUMAC TPI, a la Entrada Núm. 15, Anejos 1 y 2.

[10] *Íd.*, a la Entrada Núm. 15.

[11] *Íd.*, a la Entrada Núm. 16. Conviene mencionar, que se desprende de los autos que esta *Orden* **no** le fue notificada a Universal Properties.

[12] *Íd.*, a la Entrada Núm. 28. Para sustentar su petitorio sumario el Municipio adjuntó a su escrito los documentos siguientes: Declaración Jurada de Eileen N. Rodríguez Vélez, Directora de la Oficina de Permisos del Municipio, con fecha del 5 de mayo de 2025; **Anejo 1**: Propuesta de Servicio de Manejo y Disposición de Estorbos Públicos, preparada por Universal Properties, con fecha del 24 de enero de 2021; **Anejo 2**: Contrato entre el Municipio y Universal Properties, con fecha del 17 de mayo de 2025; **Anejo 3**: Misiva con fecha del 16 de mayo de 2023, dirigida al Secretario de Justicia y la Contralora de Puerto Rico; **Anejo 4**: Orden Ejecutiva 2021-005 emitida por el Alcalde William Miranda Torres; **Anejo 5**: Orden Ejecutiva 2024-002 emitida por el Alcalde William Miranda Torres; **Anejo 6**: (i) Contrato entre Universal Properties y la señora Rivera Valentín, y (ii) cheque emitido a la orden de Universal Properties por la cantidad de $31,900.00 dólares, con fecha del 3 de noviembre de 2022.

En la misma fecha en que se presentó el antedicho pliego, pero notificada el 8 de mayo de 2025, el foro *a quo* ordenó a la señora Rivera Valentín, así como a Universal Properties a exponer su posición para lo cual concedió un término de veinte (20) días.[13]

Para cumplir con lo ordenado, el 27 de mayo de 2025, la señora Rivera Valentín incoó su *Moción en oposición a solicitud de sentencia sumaria.*[14] En suma, la recurrida negó la mayoría de los hechos que el Municipio propuso como incontrovertidos. Así, pues, razonó que existían controversias de sobre hechos medulares las cuales ameritaban que se declara sin lugar la solicitud de sentencia sumaria.

En respuesta, mediante *Resolución* emitida y notificada el 23 de junio de 2025, el foro de instancia emitió la *Resolución* recurrida.[15] Mediante esta resolución el tribunal recurrido declaró *No Ha Lugar* la solicitud de sentencia sumaria presentada por el Municipio. Como parte del dictamen, se emitieron nueve (9) determinaciones de hecho, las cuales incorporamos por referencia.[16]

Por otro lado, dispuso que existían hechos en controversia,[17] y que, al evaluar la totalidad de los escritos presentados, concluía que no debía utilizar el mecanismo de sentencia sumaria para resolver la totalidad de este caso, puesto a que existían controversias genuinas de hechos que debían dilucidarse mediante un juicio en su fondo.

Posteriormente, el 3 de julio de 2025, la señora Rivera Valentín, así como el Municipio presentaron el *Informe de*

---

[13] SUMAC TPI, a la Entrada Núm. 29. Puntualizamos que, según consta en autos, esta orden, **tampoco** le fue notificada a Universal Properties.

[14] *Íd.*, a la Entrada Núm. 30. La recurrida acompañó esta moción con los documentos siguientes: **Exhibit I**: Contestación de Demanda y Solicitud de Desestimación del alfanumérico CG2023CV02844; **Exhibit Ii** [*sic*]: Resumen de reunión para la adquisición de estorbo público localizado en Bairoa, en la Calle 27 AV-12, fechado el 2 de mayo de 2024; **Exhibit Iii** [*sic*]: Declaración Jurada de la señora Rivera Valentín con fecha del 27 de mayo de 2024.

[15] *Íd.*, a la Entrada Núm. 33.

[16] *Íd.*, págs. 2-3.

[17] *Íd.*, pág. 3.

*conferencia preliminar entre abogados.*[18]  De ahí, se desprende de los autos ante el TPI que, el 9 de julio de 2025, se celebró la conferencia con antelación a juicio y producto de esta, señaló una vista transaccional y el juicio en su fondo.[19] Conviene mencionar que en dicha vista las partes informaron que estaban sosteniendo conversaciones transaccionales. De igual forma, el Municipio informó su intención de recurrir al foro intermedio en cuanto a la resolución mediante la cual se denegó la solicitud de sentencia sumaria.

Tal y cual, anticipado, el 24 de julio de 2025, el Municipio compareció ante nos mediante una *Petición de certiorari,* y alzó los siguientes cuatro (4) señalamientos de error:

> PRIMER ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA COMETI[Ó] GRAVE ERROR DE DERECHO EN DETERMINAR COMO UN HECHO INCONTROVERTIDO QUE EL CONTRATO ENTRE EL MUNICIPIO Y UNIVERSAL PROPERTIES LE DABA FACULTAD A UNIVERSAL PARA ACTUAR A NOMBRE DEL MUNICIPIO CON RELACI[Ó]N A LA ADQUISICI[Ó]N Y DISPOSICI[Ó]N DE ESTORBOS P[Ú]BLICOS EQUIPARANDO DICHA FACULTAD A UNA DELEGACI[Ó]N DE AUTORIDAD PARA OTORGAR CONTRATOS A NOMBRE DEL MUNICIPIO.
>
> SEGUNDO ERROR: EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMETI[Ó] GRAVE ERROR DE DERECHO EN CONTRAR COMO UN HECHO INCONTROVERTIDO EL QUE EL MUNICIPIO RECONOCIERA RESPONSABILIDAD SOBRE LOS CONTRATOS REALIZADOS POR UNIVERSAL A PESAR DE QUE NINGUNA DE LAS PARTES HA APORTADO PRUEBA DOCUMENTAL SOBRE TAL ALEGADO RECONOCIMIENTO[.]
>
> TERCER ERROR: EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMETI[Ó] GRAVE ERROR DE DERECHO EN DETERMINAR COMO UN HECHO EN CONTROVERSIA SI EL MUNICIPIO RECURRENTE ES TITULAR O NO DE LA PROPIEDAD SITA EN LA URBANIZACI[Ó]N SAN FERNANDO PLA #10 A PESAR DE QUE NINGUNA DE LAS PARTES EN EL LITIGIO APORT[Ó] PRUEBA DOCUMENTAL PARA REFUTAR EL HECHO ALEGADO A LOS EFECTOS DE QUE EL MUNICIPIO NO ES TITULAR DE LA PROPIEDAD.
>
> CUARTO ERROR: EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMETI[Ó] GRAVE ERROR DE DERECHO EN DETERMINAR COMO UN HECHO EN CONTROVERSIA SI EL MUNICIPIO RECURENTE REALIZ[Ó] GESTIONES PARA ADQUIRIR LA PROPIEDAD Y ENTREGARLA A LA DEMANDANTE – RECURRIDA[.]

---

[18] SUMAC TPI, a la Entrada Núm. 35. Véanse, además, las Entradas Núm. 28 y 39, en las cuales las referidas partes cargaron cierta prueba relacionada al informe presentado.
[19] *Íd.*, a la Entrada Núm. 43.

De ahí, el 8 de agosto de 2025, la parte recurrida incoó una *Moción en solicitud de desestimación de recurso*. En síntesis, esbozó las razones por las cuales entendía que no procedía la expedición del auto de *certiorari* y subrayó las razones por las cuales entendía que el recurso debía desestimarse.

Con el beneficio de la comparecencia de ambas partes procederemos a disponer del presente recurso.

II

## A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[20] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[21]
>
> [...].[22]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier

---

[20] 32 LPRA Ap. V, R. 52.1.
[21] *Íd.*
[22] *Íd.*

resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*

[...].[23]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[24] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[25] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[26] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[27] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[23] 32 LPRA Ap. V, R. 52.1.
[24] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[25] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).
[26] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[27] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [28]

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[29] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[30]

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[31]

## B. Sentencia Sumaria

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[32] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[33] A esos efectos, "solamente debe ser dictada una

---

[28] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).
[29] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[30] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[31] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008)
[32] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).
[33] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[34] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que de los documentos que acompañan la solicitud o que obran en el expediente del tribunal no surja controversia legítima sobre hechos materiales del caso, y que, por ende, sólo reste aplicar el derecho.[35] Ahora bien, a los fines de considerar la moción, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente.[36] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[37]

La Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.2 de Procedimiento Civil dispone que:

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[38]

Por otra parte, la Regla 36.3 de Procedimiento Civil requiere que la parte que promueve la solicitud de sentencia sumaria cumpla con los requisitos de forma siguientes:

   (1) una exposición breve de las alegaciones de las partes;

   (2) los asuntos litigiosos o en controversia;

   (3) la causa de acción sobre la cual se solicita la sentencia sumaria;

   (4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial,

---

[34] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).
[35] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).
[36] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[37] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, a la pág. 957.
[38] 32 LPRA Ap. V, R. 36.2.

indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.[39]

De otra parte, en cuanto a la contestación a la sentencia sumaria, la Regla 36.3 (b) de Procedimiento Civil dispone que esta deberá ser presentada dentro del término de veinte (20) días, desde su notificación, y deberá contener lo siguiente:

(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[40]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria y su correspondiente oposición, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[41]

---

[39] 32 LPRA Ap. V, R. 36.3.

[40] 32 LPRA Ap. V, R. 36.3 (b).

[41] 32 LPRA Ap. V, R. 36.3 (e); *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria.[42] Sobre este particular, el Tribunal Supremo ha resuelto que las partes no puede descansar en aseveraciones generales, es decir, meras afirmaciones no bastan.[43] A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil,[44] estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[45] Por tanto, como regla general, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente.[46]

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[47] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[48]

---

[42] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 281 (1990).

[43] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[44] 32 LPRA Ap. V, R. 36.5

[45] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a la pág. 215-216.

[46] *Ramos Pérez v. Univisión,* 178 DPR 200, 215 (2010); *Roldán Flores v. M. Cuebas,* supra, a la pág. 677.

[47] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 663 (2017).

[48] *Elías y otros v. Chenet y otros,* supra, a la pág. 521, citando a *García López v. Méndez García,* 88 DPR 363, 380 (1963).

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;
>
> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[49]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[50] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos".[51] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[52]

---

[49] *Roldán Flores v. M. Cuebas, et al., supra,* 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118-119 (2015).
[50] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 335-336 (2021).
[51] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 114. (Cita depurada).
[52] *Íd.,* a la pág. 115.

Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[53]

### III

Ante la consideración de este Tribunal revisor tenemos un recurso de *certiorari*, por lo que tenemos la obligación, como cuestión de umbral, el determinar si procede su expedición. En el presente caso, la parte peticionaria nos invita a concluir, mediante sus cuatro (4) señalamientos de error, que el tribunal *a quo* incidió al determinar que existían controversias de hecho que impedían disponer de la acción mediante el mecanismo procesal de la sentencia sumaria.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[54] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[55] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Además, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones,[56] así como en lo dispuesto por la Regla 52.1 de Procedimiento Civil.[57]

---

[53] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 115; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).
[54] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[55] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[56] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[57] 32 LPRA Ap. V, R. 52.1.

Tras evaluar minuciosamente el recurso presentado por el Municipio, y luego de una revisión *de novo* de la totalidad del expediente ante nos, según nos requiere el ordenamiento jurídico vigente cuando se presenta ante nuestra consideración la procedencia de una solicitud de sentencia sumaria, juzgamos que no procede la expedición del auto de *certiorari* solicitado.

Es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de las Regla 52.1 de Procedimiento Civil,[58] ni de la Regla 40 del Reglamento del Tribunal de Apelaciones.[59] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por tanto, entendemos que esta no es la etapa del procedimiento más propicia para nuestra consideración. Además, razonamos que la parte peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida. Más aun cuando las partes del título incumplieron con los requerimientos exigidos por las Reglas 36.2 y 36.3 de Procedimiento Civil, a la hora de solicitar y oponerse a la sentencia sumaria, según surge del examen *de novo* realizado por este Tribunal[60]

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *certiorari* no implica que el dictamen

---

[58] 32 LPRA Ap. V, R. 52.1.
[59] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[60] 32 LPRA Ap. V, R. 36.2 y 36.3.

revisado esté libre de errores o que constituya una adjudicación en los méritos.[61] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[62]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de c*ertiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones

---

[61] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).
[62] *SLG v. Pauneto Rivera*, 130 DPR 749, 755 (1992).